Argued at Pendleton May 7; writ of mandamus allowed
May 15, 1934

## HARVEY ET AL. *v.* CLARK
### (32 P. (2d) 591)

*Blaine Hallock,* of Baker, and *T. R. Gillenwaters,* of Klamath Falls (Hallock, Donald & Banta, of Baker, on brief), for petitioners.

*Woodson L. Patterson,* of Baker, for defendant.

*T. R. Gillenwaters* and *A. L. Leavitt,* both of Klamath Falls, amici curiae.

BAILEY, J. This is an original proceeding in this court, brought by the mayor and commissioners of the city of Baker, Oregon, against the clerk of that city, for a peremptory writ of mandamus directed to and requiring said clerk forthwith to advertise for sale certain bonds, the issuance of which had previously been authorized.

The petition for the writ alleges that pursuant to law and in accordance with the provisions of the charter of the city of Baker the legal voters of that city on May 2, 1933, at a special election authorized the city of Baker to issue bonds of the municipality in the sum of $104,123.60, for the purpose of providing funds for the construction of a sewage disposal plant in or near that city; that thereafter in compliance with the law and the provisions of the charter of Baker certain steps were taken by the city council for the construction of the sewage disposal plant and negotiations were entered into with the Reconstruction Finance Corporation and its successor, Public Works Administration, of the federal government, for financing said work by borrowing necessary funds therefor from the federal government through the issuance of such authorized bonds; and that the clerk of the city of Baker has failed, neglected and refused to take the necessary steps attendant upon the issuance of the bonds, for the reason that in his opinion the present indebtedness of the city, together with the additional indebtedness which would be created by the issuance of said bonds, would exceed the debt limitation prescribed by chapter 306, Oregon Laws, 1933.

According to further allegations of the petition, for many years sewage originating in the city of Baker has been discharged in an untreated state into the Powder river, thereby creating a serious danger and menace to the health of the inhabitants of that city; and on January 11, 1933, the circuit court of Oregon for Baker county in a suit then pending against the city of Baker entered a decree directing that the nuisance thus created be abated by the construction of a modern sewage disposal plant in or near said city.

The defendant, in his answer, admits the allegations of the complaint but denies petitioners' right to a writ.

Some question seems to have arisen as to the authority of the city of Baker to construct a sewage disposal plant, and in order to remove any uncertainty regarding that authority the legislature enacted a statute, chapter 289, Oregon Laws, 1933, granting such right to all cities and towns in this state; and it was in pursuance of this latter enactment that the city of Baker was proceeding to carry out the decree above mentioned.

In 1929 the legislature enacted a law now known as § 56-2301, Oregon Code 1930, reading as follows:

"Where no lesser limitation has been otherwise provided by law or charter, no city or town shall hereafter issue or have outstanding at any one time bonds in excess of 10 per cent of the assessed valuation of the property within its boundaries, after deducting from outstanding bonds such cash funds and sinking funds as are applicable to the payment of the principal thereof; provided, that this act shall not apply to bonds issued for water, gas, power, or lighting purposes, nor to bonds issued pursuant to applications to pay assessments for improvements in instalments under statutory or charter authority; provided further, that this act shall not affect the right of any city or town to issue bonds heretofore legally voted and authorized nor the right to refund bonds now outstanding to the extent that sinking funds shall not be available at maturity to retire such bonds."

Present indebtedness of the city of Baker, together with the additional amount above specified, would be within the limitation provided by the foregoing section, and within that provided by the city charter of Baker. During the 1933 session, however, the legislature amended § 56-2301 by reducing the amount of

permissible indebtedness from ten to five per cent, changing the former law only by substituting the figure "5" for the "10" in the 1929 act.

The petitioners contend that the five per cent limitation prescribed by the 1933 act does not apply in the present instance, because the bonds in question had been legally authorized prior to the effective date of the amendment. On the other hand, the city clerk contends that the proviso in the original 1929 enactment, which was carried into the 1933 act unchanged, refers to bonds authorized prior to the date when the original act took effect and in nowise applies to bonds authorized between that date and the taking effect of the 1933 amendment.

■ One of the cardinal rules in the construction of statutes is that the intent of the lawmakers must be ascertained and given effect. The 1929 act provided that "no city or town hereafter shall issue or have outstanding at any one time bonds in excess of ten per cent of the assessed valuation of the property within its boundaries". That the legislature did not intend to affect bonds outstanding in excess of the ten per cent limitation or to prevent the issuance of additional bonds which had already been authorized is evidenced by the wording of the last proviso in the 1929 enactment especially exempting from the effect of the statute the issuance of bonds theretofore authorized and "the right to refund bonds" then outstanding.

■ Both the 1929 and the 1933 legislative assemblies must have realized that some, at least, of the cities and towns of this state had gone to the expense of submitting to the electorate proposals authorizing the issuance of bonds for local improvements and, relying

upon a favorable vote, undertaken the further cost of making surveys and preparing plans, and in some instances entered into valid contracts for the work to be done. Prohibition against the issuance of bonds which had already been authorized to pay for improvements or construction would in such cases subject the municipalities to respond in damages for failure to carry out contracts, through lack of financing, and would in addition entail a complete loss of money expended in preparatory surveys.

Unless the last proviso, the saving clause, in the 1929 enactment, is construed in connection with the amendment of 1933, municipalities not only would be prevented from issuing bonds theretofore legally authorized, and completing improvements undertaken, but would also be denied the right to refund bonds issued between the dates of the two enactments and then outstanding in excess of the five per cent debt limitation. It was, however, obviously the intention of the 1933 legislature not to prohibit the issuance of bonds authorized subsequent to, and within the limitation of, the 1929 enactment, nor to deny municipalities the right to issue refunding bonds legally issued between the effective date of the original enactment and that of the 1933 amendment.

To give effect to the legislative intent, the words "hereafter", used in the first part of the act, and "heretofore", appearing in the last proviso thereof, are to be construed distributively. As to the original act they respectively mean "subsequently" and "previously" with reference to the time of its passage; and as to the amendment their respective meaning is "subsequently" and "previously" to the time of its becoming effective: *Ely v. Holton,* 15 N. Y. 595; *People v. McFall,* 158 N. Y. S. 974.

The intention of the lawmakers, as here pointed out, is definitely expressed in the statute as it now stands, and there is no reason for not giving effect to the will of the legislature. It is therefore ordered that the peremptory writ issue in accordance with the prayer of the petition.

RAND, C. J., and BEAN and CAMPBELL, JJ., concur.